UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES ODOM, EDWARD WEST, and
CHRISTOPHER JONES on behalf of
themselves and all others similarly situated,

                Plaintiffs,

      v.

HAZEN TRANSPORT, INC.,

                Defendant.

_____

DECISION & ORDER

10-CV-6304T

## PRELIMINARY STATEMENT

By order dated July 29, 2010, the above-captioned matter has been referred to the undersigned for the supervision of pre-trial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B).  (Docket # 8).  The parties have further stipulated to the jurisdiction of this Court for the sole purpose of determining whether to approve a settlement agreement reached by the parties, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  (Docket # 21).  For the reasons that follow, the proposed settlement is approved.

## BACKGROUND

This case arises from defendant's alleged failure to pay appropriate overtime wages and alleged improper deductions from plaintiffs' pay.  The named plaintiffs, James Odom,

Edward West and Christopher Jones, filed suit on behalf of themselves and all other similarly-situated individuals against defendant Hazen Transport, Inc. ("Hazen").  (Docket # 1).

The named plaintiffs worked as delivery drivers for Hazen and were classified by Hazen as "independent contractors."  Plaintiffs contend that they were in fact employees of Hazen by virtue of the degree of control that Hazen exerted over their hours, ability to work for other companies, delivery routes and attire.  Plaintiffs assert that they frequently worked in excess of forty hours in a week without compensation for those excess hours.  In addition, the named plaintiffs contend that Hazen improperly deducted the cost of leasing the trucks and other fees from their pay.  These pay practices, plaintiffs allege, violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"), and the New York Labor Law ("N.Y. Labor Law").  (*Id*.).

After this case commenced, the parties engaged in limited discovery to identify the potential class members and to calculate the number of overtime hours they worked, their relevant rates of pay and the deductions taken from their pay.  (Docket # 28).  Following that discovery, the parties entered into settlement negotiations that resulted in the settlement agreement dated March 11, 2011, currently pending before this Court for final approval (the "Settlement Agreement" or "Class Settlement").  (*Id*.).  On April 29, 2011, this Court issued an Order preliminarily approving the Settlement Agreement, certifying the class for settlement and ordering that notice be mailed to all potential class members (the "Notice").  (Docket # 34).  The Notice described the pending suit and proposed Class Settlement and explained that class

members could participate in the settlement, object to final approval of the settlement or request exclusion from the settlement by "opting out" of the class.  (*Id.*).[1]

The class is defined as "sixteen (16) persons or entities who contracted with Hazen and provided delivery services in New York for or on behalf of Hazen and who were classified as independent contractors."  (Docket # 34).   Under the Settlement Agreement, Hazen would pay each class member two sums:  the first from a portion of a common fund of $39,000 that represents his or her percentage of overtime worked in relation to the other class members; the second, a portion of a common fund of $79,000 that represents his or her percentage of allegedly improper deductions in relation to those of other class members.   The Settlement Agreement further provides that plaintiffs who do not opt out of the Class Settlement agree to release all claims against Hazen arising from the alleged non-payment of overtime compensation and improper deductions.

As the Notice advised, any class members who wished to opt out of the class or to file objections to the Settlement Agreement were required to do so by May 26, 2011.   No objections were received by this Court, nor did any of the sixteen potential class members elect to opt out.   Finally, class members were also advised that a hearing would be conducted by this Court on June 6, 2011, to determine whether to approve the Class Settlement, and they were invited to attend the hearing to express their views relating to the adequacy of the settlement.   At that hearing, counsel for the parties argued in support of the Class Settlement.   One class member, Timmy Jenison, attended the hearing and urged approval of the settlement.

---

[1]  The record demonstrates that all members of the class received the Notice.  (*See* Docket # 38).

**DISCUSSION**

The parties jointly argue that class certification in this matter is appropriate pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and that the proposed settlement is fair, reasonable and adequate.  This Court is also presented with an application for attorneys' fees to be paid to plaintiffs' counsel pursuant to Rule 23(h).

## I.  **Class Certification**

Certification of a class action is governed by Rule 23 of the Federal Rules of Civil Procedure.  To qualify for class certification, a putative class must satisfy the four requirements of Rule 23(a), as well as the requirements of one of the three subsections of Rule 23(b).  Under Rule 23(a), certification of a class action is appropriate if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun

> by or against class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

This Court first will consider whether class certification is appropriate in light of the four requirements set forth in Rule 23(a).

**A.   Numerosity:**  The numerosity requirement under Federal Rule 23(a) is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Rather, it refers to the burden that would be imposed by joinder.  *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004) ("[i]mpracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder") (quotation omitted).

While a potential class of forty members is generally considered sufficiently numerous, *see Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d at 483, a court evaluating the appropriateness of class certification must consider more than mere numbers alone.  *See Robidoux v. Celani*, 987 F.2d at 936.  Rather, a determination of practicability should be based upon all the circumstances surrounding the case.  *Id.*  The court should consider such relevant factors as: "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits."  *Id.* (citing 1 Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.06, at 143 (2d ed. 1985)).  *See also Cypress v. Newport News Gen. & Nonsectarian*

*Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (class of eighteen individuals found sufficiently numerous); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (certification of class may be proper even with class as small as fourteen members); *Meyer v. Stevenson, Bishop, McCredie, Inc.*, 1976 WL 788, *2 (S.D.N.Y. 1976) (certifying class of thirty individuals); *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968) (class of twenty-five individuals satisfied numerosity requirement).

In this matter, the parties jointly seek class certification for a class of sixteen individuals who worked as truckers.  While joinder of these individuals is certainly not impossible, it is nonetheless improbable under the circumstances of this case.  The small recoveries that many of the class members could reasonably expect to recover even if they prevailed on the merits makes it unlikely that, absent the benefit of class representation, they would choose to bear the costs of individual lawsuits.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device"); *Robidoux*, 987 F.2d at 936 (court should consider the financial resources of class members, as well as their ability to institute individual suits).  In addition, the more efficient use of judicial resources counsels in favor of class certification in this matter.  *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. at 463 ("[w]hile 25 is a small number . . . , it is a large number when compared to a single unit.  I see no necessity for encumbering the judicial process with 25 lawsuits, if one will do").  Accordingly, I find that the numerosity requirement has been satisfied.

**B.  Commonality:**  Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The purpose of this requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  This requires a showing that the class members "have suffered the same injury" involving a "common contention" that, in determining "its truth or falsity[,] will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation omitted).  Thus, the question of class certification turns on whether the class action has the capacity to "generate common answers apt to drive the resolution of the litigation."  *Id.* (emphasis omitted).  Courts have generally construed the commonality requirement liberally and require that only one issue be common to all class members.  *See id.* at 2556; *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992).

In the case at bar, all plaintiffs have raised the identical claim that they were incorrectly classified as independent contractors and thus denied overtime compensation by Hazen for hours worked over forty in certain work weeks and subjected to improper deductions.  In determining liability, the question of whether Hazen is an employer under the relevant statutes appears to be an issue common to all plaintiffs and central to a resolution of the claims.  I therefore find that the commonality requirement has been satisfied.

**C.  Typicality:**  The typicality requirement of Rule 23 requires that the claims of the representative party be typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Like the commonality requirement, typicality does not require the representative party's claims to be

identical to those of all class members.  *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. at 200.  *See also Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999) (commonality and typicality tend to merge "because 'both serve as guideposts for determining whether . . . the named plaintiff's claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence'") (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. at 157 n.13), *cert. denied*, 529 U.S. 1107 (2000).  The representative party has demonstrated typicality when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Here, the named plaintiffs' claims arise from the same circumstances as those that give rise to the class members' claims.  Thus, the legal arguments raised by the named plaintiffs will be typical of those of all class members.  For these reasons, I find that the typicality requirement has been satisfied.

**D.  Adequacy of Representation:**  The final requirement of Rule 23(a) relates to the adequacy of representation.  Under the rule, the court must find that "the representative parties will fairly and adequately protect the interests of the class."  Fed R. Civ. P. 23(a)(4).  To make such an evaluation, the court first must consider whether class counsel is "qualified, experienced and generally able to conduct the litigation."  *In re Drexel Burnham Lambert*, 960 F.2d at 291 (internal quotation omitted).  Second, "the class members must not have interests that are 'antagonistic' to one another."  *Id.*

Class counsel in this case has demonstrated that it is well-qualified to conduct the litigation.  Plaintiffs' attorneys are experienced employment litigators who have handled

numerous cases, including class actions, involving claims under the FLSA and the N.Y. Labor

Law.  (Docket # 37, Carling Aff. at ¶¶ 6-7).  Further, the class members assert common claims;

the record reveals no potential conflicts between or among any class members; and, indeed, one

of the named plaintiffs expects to be paid a sum less than the sums to be paid to over half of the

class members.  I therefore find that the adequacy of representation requirement has been

satisfied.

   **E.  <u>Common Questions of Law and Fact</u>:**  Having found that all requirements of

Rule 23(a) have been satisfied, this Court must now address the requirements of Rule 23(b).  As

stated above, class certification is appropriate if common questions of law or fact predominate

over any questions affecting only individual members.  In addition, a class action must be

superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

   "Class-wide issues predominate if resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the issues

subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.

2002) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001),

*cert. denied*, 536 U.S. 917 (2002)).  The predominance requirement under Rule 23(b) is more

demanding than the Rule 23(a) commonality inquiry and is designed to determine whether

"proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Moore v. PaineWebber, Inc.*, 306

F.3d at 1252.

Here, I find that common questions of law and fact predominate over any questions affecting individual class members.  All members of the class assert that they were incorrectly classified as independent contractors by Hazen and that, as a result of that improper classification, they were not paid overtime wages for hours worked in excess of forty hours per week and were subject to improper deductions.  This Court is not aware that any class members has any other legal claim against Hazen arising in this action.  While questions of how many hours of overtime each plaintiff worked and how much of the deductions were improper are particular to each plaintiff, whether the class members are entitled to this pay depends upon resolution of the common issue whether they were employees or independent contractors.  In addition, if they were improperly classified, the methodology used to determine the amounts that are owed presumably will be the same.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139 (common issues may predominate "even when there are some individualized damage issues"); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. at 343 (finding commonality despite differences among plaintiff employees relating to amount of unpaid overtime due); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002) (certification of class action under Rule 23(b)(3) recommended for case involving unpaid overtime despite necessity of individualized damage calculations); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (in class action for minimum wage and overtime violations, individual differences relating to damages did not defeat commonality).

With respect to the superiority prong, Rule 23(b)(3) requires that the class action be superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).  The rule further sets forth a non-exclusive list of factors pertinent to the superiority determination:

> (a) the class members' interests in individually controlling the
> prosecution . . . of separate actions;
> (b) the extent and nature of any litigation concerning the
> controversy already begun by . . . class members;
> (c) the desirability . . . of concentrating the litigation . . . in the
> particular forum;
> (d) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The court need not consider the fourth factor, however, when the class is being certified solely for the purpose of settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 620.

Considering the above factors, I find that class representation is both a superior method of adjudication and indeed may be vital to a successful resolution of this matter. As discussed above, many of the class members worked relatively few overtime hours and thus are expecting modest recoveries. Thus, those individuals are not likely to file individual lawsuits and incur the expenses of litigation. Therefore, without the economic benefit of class representation, many of the plaintiffs would be forced to forego the compensation to which they are entitled. *See Amchem Prods., Inc.*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (internal quotations omitted); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. at 339. In addition, counsel have represented that they are unaware of any other action brought by any of the class members arising from the overtime dispute; thus, this forum seems as desirable as any in which to concentrate the litigation. It is therefore the finding of this Court that a class action is the superior method of adjudication in this case.

11

On the evidence before me, I find that the requirements of Federal Rules 23(a) and (b) have been satisfied.  Therefore, pursuant to the consent of both parties, this Court grants certification of the class for the sole purpose of settlement.

## II.  Approval of Settlement Agreement

This Court must now address the terms of the proposed settlement agreement.  To approve a class action settlement, the court must find that it is "fair, adequate, and reasonable, and not a product of collusion."  *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)), *cert. denied*, 544 U.S. 1044 (2005).  "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Id*. (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)).  Indeed, the settlement of class action cases is strongly encouraged by the courts.  *Id*. at 116-17 (citations omitted).

As discussed more fully below, the class in this matter is represented by a law firm experienced in employment litigation, including class actions.  Hazen's counsel is equally well-qualified.  At the preliminary approval hearing and the final fairness hearing, counsel described in detail the lengthy and thorough negotiating process engaged in by the parties.  Counsels' experience and skill, coupled with my familiarity with this litigation, leads me to

conclude that the Class Settlement resulted from extensive arm's-length, non-collusive negotiations between able counsel.

    A.  **The *Grinnell* Factors**:  In evaluating the adequacy of a settlement agreement, courts in this Circuit generally consider the factors enunciated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The so-called *Grinnell* factors are as follows:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery;
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d at 463.

    In the case at bar, the *Grinnell* factors weigh overwhelmingly in favor of class settlement.  First, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001).  Although this case is less complex than many, the costs of continued litigation would be substantial and might outweigh the recovery that reasonably may be achieved.  Discovery would entail even more substantial document review, as well as depositions of numerous parties and witnesses.  Counsel estimates that the litigation could take between one year and eighteen months

13

to complete and that a trial would require a minimum of one to two weeks – an estimate that appears reasonable to this Court.  (Docket # 36, Carling Aff. at ¶¶ 32-33).

Second, the court must consider the reaction of the class to the settlement, which has been uniformly positive.  Of the sixteen potential class members, none has filed an objection. Only one potential plaintiff declined to submit a claim form on the basis that he did not want to receive any proceeds from the settlement, but indicated that he did not object to the settlement. (Docket # 38 at ¶ 12).

The third *Grinnell* factor looks to the stage of the proceedings and the amount of discovery completed.  While the parties need not have engaged in extensive discovery, *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982), a sufficient factual investigation must have been conducted to afford the court the opportunity to "'intelligently [] make . . . an appraisal' of the Settlement."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Plummer v. Chemical Bank*, 668 F.2d at 660).  In addition, "[t]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *Id.* (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

Here, the parties engaged in discovery to identify potential class members, the hours that they worked and the deductions from the drivers' pay.  (Docket # 36, Carling Aff. at ¶¶ 7-8).  In addition, class counsel compared the time and pay records that the named plaintiffs provided with records maintained by Hazen.  (*Id.*).  Thus, although this case is still in the relatively early stages of litigation, the discovery conducted to date has been sufficient to

14

determine the unpaid overtime compensation due to each plaintiff and the amount of allegedly improper deductions from their pay.

The fourth and fifth factors under *Grinnell* require the court to consider the risks of establishing liability and damages.  The court is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981), or to "foresee with absolute certainty the outcome of the case[,]" *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177.  Rather, the court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the [s]ettlement.'"  *Id.* (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)).

Plaintiffs' success on the merits is certainly not assured.  The central question is whether Hazen qualifies as plaintiffs' employer.  At the fairness hearing, class counsel disclosed that there was authority supporting both parties' positions regarding whether the drivers' classification as independent contractors was proper.  In view of the inconsistent caselaw and absence of controlling authority on the question, liability on the merits remains uncertain.

The sixth *Grinnell* factor considers the risk of maintaining class status through trial.  Although class certification has been approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of a settlement.  If settlement were disapproved, it is likely that Hazen would challenge the class certification and Hazen would also argue that the plaintiffs' claims under the FLSA and the N.Y. Labor Law should not proceed in the same lawsuit.  (Docket # 36, Carling Aff. at ¶ 23).  While plaintiffs may prevail, the risk that the case might be not certified is not speculative and weighs in favor of the Class Settlement.

The seventh factor to be weighed is the ability of Hazen to withstand a greater judgment.  Neither Hazen nor plaintiffs have argued that Hazen could not bear a judgment greater than the settlement amount involved here.  Thus, this factor weighs against the settlement. The amount of the settlement, however, when considered with the other *Grinnell* factors, does not alone render the settlement unfair.  *See In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 ("defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair") (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997)).

The final two factors – the range of reasonableness of the settlement fund in light of the best possible recovery (eighth factor) and in light of the attendant risks of litigation (ninth factor) – weigh in favor of the settlement.  The determination whether a settlement is reasonable does not involve the use of a "mathematical equation yielding a particularized sum."  *Id*. at 178 (quoting *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)). Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972).

The Settlement Agreement in this matter represents, in my view, a reasonable compromise that accounts for the risks and rewards posed by this litigation.  At the fairness hearing, class counsel disclosed that the settlement amount is approximately one-third of the total damages recoverable by the plaintiffs if they were to prevail fully on both claims.  Such a

compromise, I find, reasonably balances the damages potentially recoverable by the plaintiffs with the genuine risks of continued litigation.

On this record, I find that the *Grinnell* factors weigh in favor of the proposed settlement and that the Agreement represents a reasonable compromise resulting from the conscientious and skilled negotiations by counsel of both parties.

**B.   Attorneys' Fees:**   The Settlement Agreement also provides for an award of attorneys' fees and expenses in the amount of $57,000, which represents 32.6% of the $175,000 total settlement fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980) (appropriateness of attorneys' fees should be measured against total value of settlement fund created).

Awards of attorneys' fees in class settlements are generally calculated through either the "Lodestar" method or the "Percentage of the Award" method.  Under the lodestar method, the court must multiply the number of hours reasonably billed by the reasonable hourly rate.  *See Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  Once the "lodestar" amount is calculated, the court may then exercise its discretion to adjust the figure (and apply a multiplier to the lodestar) after considering such factors as the quality of counsel's work, the probability of success of the litigation and the complexity of the issues.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).  Under the percentage method, the court awards counsel a percentage of the total award received by the plaintiffs.  To calculate the percentage, the court considers the effort expended and risks undertaken by plaintiffs' counsel and the results of those efforts, including the value of the benefits obtained for the class.  *See Silverberg v. People's Bank*, 2000 WL 502621, *3 (D. Conn. 2000); *see also In re Independent*

*Energy Holdings PLC*, 2003 WL 22244676, *6 (S.D.N.Y. 2003) ("percentage used in calculating any given fee award must follow a sliding scale and must bear an inverse relationship to the amount of the settlement").

The trend in the Second Circuit "is toward the percentage method, . . . which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, *25 (S.D.N.Y. 2002)). Regardless of the method used, the reasonableness of the attorneys' fees is ultimately determined by evaluating the six factors articulated by the Second Circuit in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Those factors include:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of litigation . . . ;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

*Id*. (internal quotations omitted).

Pursuant to this Court's request, counsel has submitted for *in camera* review copies of its time records relating to this matter. These records reveal few apparent redundancies and little duplication of effort. The vast majority of time was spent investigating the facts and thereafter negotiating a settlement with opposing counsel, with the largest percentage of work having been performed by the more junior, and thus less expensive, of the two plaintiffs' attorneys. To date, counsel has expended 265.30 hours, which at their normal billing rate, amounts to $54,384.50. In addition, counsel has expended $564.96 in expenses, bringing the

total amount to $54,949.46. Thus, counsel's requested award of $57,000 results in an excess payment of approximately $2,000, constituting a reasonable multiplier of 1.04. *See Wal-Mart Stores, Inc.*, 396 F.3d at 123 (multiplier of 3.5 was acceptable). In addition, following the hearing, class counsel expended and will continue to expend additional hours beyond those reflected in the billing records to facilitate settlement payments to the class members and to provide an accounting to the Court. (Docket # 37, Carling Aff. at ¶ 22). Thus, I find that the requested award is reasonable.

   In calculating the value of work performed, this Court has considered the regular hourly rates that plaintiffs' counsel affirms it charges to all of its clients. (Docket # 37, Carling Aff. at ¶¶ 18-19). Specifically, the rate charged for an associate is $195 per hour and the hourly rate charged for a partner is $250 per hour. (*Id*. at ¶ 18). In light of the expertise required for an FLSA class action litigation, I find that these rates reasonably conform to the prevailing rates charged in this community. *See*, *e.g.*, *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (approving hourly rates of $190 to $260 for class counsel in Rochester); *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 190 F. Supp. 2d 509, 515-16 (W.D.N.Y. 2001) (finding reasonable hourly rates for Rochester attorneys ranging from $120 to $235); *Wylucki v. Barberio*, 2001 WL 34013676, *6-7) (W.D.N.Y. 2001) (hourly rate of $250 found reasonable for Buffalo counsel); *McPhatter v. Cribb*, 2000 WL 743972, *3 (W.D.N.Y. 2000) (hourly rates ranging between $125 and $240 found reasonable for Buffalo attorneys); *Alnutt v. Cleary*, 27 F. Supp. 2d 395, 399-400 (W.D.N.Y. 1998) (hourly rates for associates between $120 and $180 reasonable for Rochester attorneys).

The complexity of the case further counsels in favor of the requested attorneys' fee award.  Although this case is not as complex as many class actions lawsuits, the issues raised by plaintiffs' claims involve mixed questions of fact and unsettled law.  *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (number of hours worked is question of fact, but whether specific work performed is protected under the labor laws is question of law).  Moreover, without settlement, plaintiffs' counsel would be required to engage in extensive discovery involving over one dozen individual drivers.

Further, the risks of litigation in this matter were significant at the time counsel agreed to represent the plaintiff class.  As discussed above, plaintiffs' success remains uncertain if settlement is not approved.

As previously discussed, counsel is well-qualified to conduct this litigation.  The fee requested by counsel here is reasonable in relation to the work already performed, representing approximately 32% of the overall settlement fund.  Approximately 265 hours have been devoted to this case by plaintiffs' counsel, amounting to over $54,000 at counsels' customary billing rates.

Finally, to the extent that this Court should weigh public policy considerations, the Court finds that they too weigh in favor of approval.  As already noted, were it not for this class action, many of the plaintiffs' claims likely would not be heard.  In addition, if this Court denied an award of fees sufficient to compensate counsel fairly for the work that they have performed, no reasonable attorneys – these or others – would be willing to take on class actions such as this.

For these reasons, I find that the requested attorneys' fees are reasonable.  The law firm of Burns & Schultz, LLP shall be awarded attorneys' fees in the requested amount of $57,000.

## **CONCLUSION**

For the foregoing reasons, I hereby approve the proposed Class Settlement as fair, reasonable and adequate and certify the proposed class for the purpose of settlement.  Thus, the joint motion of the named plaintiffs and Hazen for certification of the settlement class and approval of the class action settlement **(Docket # 36)** is **GRANTED**.  In addition, the request for approval of the attorneys' fees and expenses **(Docket # 37)** is **GRANTED**.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
August   5  , 2011

21